# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAEKWON THOMAS, AUSTIN STANDLEY-TORO, JOHN DOE 4 (a minor, by and through his parent), JANE DOE 4, and JANE DOE 7, | Civil Action No. _____ |
| Plaintiffs, | COMPLAINT |
| v. | |
| The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

2416825.6

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

JURISDICTION AND VENUE ...........................................................................................3

THE PARTIES .....................................................................................................................4

I.    Plaintiffs...................................................................................................................4

    A.    Plaintiff Raekwon Thomas ..........................................................................4

    B.    Plaintiff Austin Standley-Toro ....................................................................4

    C.    Plaintiff John Doe 4 .....................................................................................4

    D.    Plaintiff  Jane Doe 4 .....................................................................................5

    E.    Plaintiff Jane Doe 7 .....................................................................................5

II.   Defendants ...............................................................................................................5

    A.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)...........5

    B.    QualityHealth Staffing, LLC .......................................................................7

FACTUAL ALLEGATIONS ...............................................................................................8

    A.    Devereux represented that it would provide children with a safe environment. ...................................................................................................15

    B.    Devereux and its staff members broke patients' and families' trust. ..................16

    C.    Devereux failed to take steps to protect the children from abuse.........................24

    D.    Plaintiffs Were Abused in Devereux Facilities. .................................................30

        1.    Plaintiff Raekwon Thomas ..............................................................30

        2.    Plaintiff Austin Standley-Toro .........................................................31

        3.    Plaintiff John Doe 4.........................................................................33

        4.    Plaintiff Jane Doe 4 .........................................................................35

        5.    Plaintiff Jane Doe 7 .........................................................................39

VICARIOUS LIABILITY....................................................................................................42

CAUSES OF ACTION.........................................................................................................44

COUNT I VIOLATION OF TITLE IX (20 U.S.C. §§ 1681, *ET SEQ.*) CREATION OF SEXUALLY HOSTILE CULTURE/HEIGHTENED RISK OF SEXUAL HARASSMENT ....................................................................................................44

COUNT II NEGLIGENCE ...................................................................................................49

COUNT III NEGLIGENT HIRING......................................................................................51

COUNT IV NEGLIGENT RETENTION .............................................................................51

**TABLE OF CONTENTS**
**(continued)**

Page

COUNT V NEGLIGENT SUPERVISION .................................................................53

COUNT VI GROSS NEGLIGENCE .......................................................................55

COUNT VII NEGLIGENT MISREPRESENTATIONS ............................................58

COUNT VIII VIOLATIONS OF THE COLORADO CONSUMER PROTECTION
ACT,  COLORADO REVISED STATUTES ("C.R.S.") §§ 6-1-101, ET SEQ.
(PLAINTIFF JANE DOE 4 AGAINST DEVEREUX) ......................................60

COUNT IX ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY:
PLAINTIFF THOMAS (PLAINTIFF THOMAS AGAINST DEVEREUX) ..............63

COUNT X ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY:
PLAINTIFF STANDLEY-TORO (PLAINTIFF STANDLEY-TORO AGAINST
DEVEREUX) ...............................................................................................64

COUNT XI ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY:
PLAINTIFF JOHN DOE 4 (PLAINTIFF JOHN DOE 4 AGAINST DEVEREUX) .......65

COUNT XII ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY:
JANE DOE 4 (PLAINTIFF JANE DOE 4 AGAINST DEVEREUX) ..........................67

COUNT XIII ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY:
JANE DOE 7 (PLAINTIFF JANE DOE 7 AGAINST DEVEREUX) ..........................68

COUNT XIV NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ..............................69

COUNT XV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ............................70

COUNT XVI BREACH OF FIDUCIARY DUTY ......................................................71

PRAYER FOR RELIEF ...........................................................................................72

DEMAND FOR TRIAL BY JURY ...........................................................................72

2416825.6

## INTRODUCTION

> Child abuse is the gravest and most costly public health issue in the United States today. Eradicating child abuse would reduce the overall rate of depression by more than half, alcoholism by two-thirds, and suicide, IV drug use, and domestic violence by three-quarters. It would also have a dramatic effect on workplace performance and vastly decrease the need for incarceration.[1]

1.     Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"), through 21 facilities with more than 7,500 staff in 13 states, takes on responsibility for protecting thousands of our country's most vulnerable members: children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system.[2]

2.     Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, Devereux exposed them to predators and abusers. Devereux failed to enact safety measures and other policies to protect children; failed to adequately screen, hire, train, and supervise staff; and failed to fulfill its duties under state and federal law.

3.     As a result of Devereux's misconduct, children in Devereux facilities across the country have reportedly been sexually abused—often by Devereux staff.

4.     In August 2020, the *Philadelphia Inquirer* released a devastating Report detailing decades of sexual, physical, and emotional abuse inflicted upon these especially vulnerable children by Devereux staff members. The Report reveals that "at least 41 children as young as

---

[1] Bessel Van der Kolk, *The Body Keeps the Score* 148 (Viking, 2014) (hereinafter "BKTS").
[2] https://www.devereux.org/site/SPageServer/?pagename=about (last visited June 2, 2022); https://web.archive.org/web/20210301153112/https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited June 2, 2022).

12, and with IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."

5.     After the Inquirer's August 2020 report was published, an additional 13 former Devereux students came forward with allegations of sexual abuse they experienced.[3] These children were as young as 8 years old when they were sexually abused.[4] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[5] Seven of those children reportedly complained to Devereux staff or a social worker while the abuse was happening, but their complaints were ignored and the abuse continued.[6]

6.     Plaintiffs bring this lawsuit to hold Devereux accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Devereux's care.

7.     Accordingly, Plaintiffs Raekwon Thomas, Austin Standley-Toro, John Doe 4[7] (a minor, by and through his mother), Jane Doe 4, and Jane Doe 7 make individual claims for the abuse they suffered.

---

[3] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 2, 2022).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] A pseudonym has been used in place of Plaintiff John Doe 4, Jane Doe 4, and Jane Doe 7's real names due to privacy concerns. Plaintiffs John Doe 4 (by and through his parent), Jane Doe 4 and Jane Doe 7 may proceed using a pseudonym at this stage of the case because they have a reasonable fear of severe harm if their names are disclosed based upon the facts alleged and nature of this case which involves sensitive information. *See Doe v. Genesis Healthcare,* No. 21-551, 2021 U.S. Dist. LEXIS 78205 (E.D. Pa. Apr. 23, 2021) (endorsing "balancing test to determine if the plaintiff's reasonable fear of severe harm outweighs the public's interest in open litigation" when considering right of litigant to proceed anonymously) (citations omitted). In the related case of *Jines v. Devereux,* No. 2:21-cv-00346 (E.D. Pa.), Plaintiffs who used pseudonyms

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because

Plaintiffs allege claims arising under the laws of the United States, including 20 U.S.C. § 1681.

9.      This Court has subject matter jurisdiction over claims brought by Plaintiffs

Standley-Toro, John Doe 4 (by and through his parent), and Jane Doe 4, based on the diversity of

the parties pursuant to 28 U.S.C. § 1332. Defendants Devereux and QualityHealth are citizens of

the state of Pennsylvania, where they are headquartered, incorporated, and operate their principal

places of business. Plaintiff Standley-Toro is a citizen of Florida, Plaintiff John Doe 4 is a citizen

of California, and Plaintiff Jane Doe 4 is a citizen of Colorado. The amount in controversy,

without interest and costs, exceeds $75,000.

10.      This Court has personal jurisdiction over Defendant the Devereux Foundation

(d/b/a Devereux Advanced Behavioral Health) because its national headquarters is located at 444

Devereux Drive, Villanova, Pennsylvania 19085. Devereux has continuous and systematic

contacts with the state of Pennsylvania such that it is essentially "at home" in the state. Devereux

was founded in Philadelphia, and its headquarters have remained in the state of Pennsylvania

since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team

operate out of their Pennsylvania headquarters. Defendant also operates approximately 90

Devereux facilities in northeast and southeast Pennsylvania.[8]

---

included Jane Does 1-6 and Jon Does 1-3. This Complaint follows that pattern by picking up the
pseudonyms with "John Doe 4" and "Jane Doe 7." Plaintiff Jane Doe 4 was previously included
in the *Jines* case, but voluntarily dismissed her claims in that case without prejudice. She is
renewing her claims in this litigation.
[8] https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited June 2, 2022).

2416825.6

11.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

## THE PARTIES

### I.     Plaintiffs

#### A.     Plaintiff Raekwon Thomas

12.     Plaintiff Raekwon Thomas is a citizen of the Commonwealth of Pennsylvania and currently resides in West Chester, Pennsylvania.

13.     Plaintiff Thomas was a patient and student at Devereux in Glenmoore, PA when he was approximately 17 years old, beginning in 2016. Plaintiff received educational services while in Devereux's care.

#### B.     Plaintiff Austin Standley-Toro

14.     Plaintiff Austin Standley-Toro is a citizen of the state of Florida and currently resides in Tallahassee, Florida.

15.     Plaintiff Standley-Toro was a patient and student at Devereux in Woodville, Florida when he was approximately 12 years old, in or about 2007. Plaintiff received educational services while in Devereux's care.

#### C.     Plaintiff John Doe 4

16.     Plaintiff John Doe 4, a minor by and through his parent, is a citizen of the state of California and currently resides in Campbell, California.

17.     Plaintiff John Doe 4 was a patient and student at Devereux in Westminster, Colorado when he was approximately 12 years old, from August 31, 2020 to July 7, 2021. Plaintiff John Doe 4 received educational services while in Devereux's care.

**D.**   **Plaintiff  Jane Doe 4**

18.    Plaintiff Jane Doe 4 is a citizen of the state of Colorado and currently resides in Lakewood, Colorado.

19.    Plaintiff Jane Doe 4 was a patient at Devereux in Westminster, Colorado when she was approximately 14 years old, beginning on or about April 20, 1995. Plaintiff Jane Doe 4 received educational services while in Devereux's care.

**E.**   **Plaintiff Jane Doe 7**

20.    Plaintiff Jane Doe 7 is a citizen of the state of Pennsylvania and currently resides in Munhall, Pennsylvania.

21.    Plaintiff Jane Doe 7 was a patient and student at Devereux in Malvern, Pennsylvania when she was approximately 17 years old, beginning on or about August 2010. Plaintiff Jane Doe 7 received educational services while in Devereux's care.

**II.**   **Defendants**

**A.**   **The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)**

22.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization which operates 21 campuses in 13 states[9], annually treating more than 25,000 children and young adults with advanced behavioral, intellectual, developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, Pennsylvania 19085.

---

[9] Facilities are located in AZ, CA, CO, CT, DE, FL, GA, MA, NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited June 2, 2022).

23.     The Devereux Foundation's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide issues impacting Devereux campuses across the nation. Devereux's centralized decision-making is reflected in this team.  In addition to Devereux's CEO, included among Devereux's Senior Leadership Team are:

      a.     A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.

      b.     A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

      c.     A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values."

      d.     A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."

24.     Upon information and belief, at all times Devereux has been solely responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, as well as solely responsible for hiring, supervision, and disciplinary decisions concerning employees of Devereux facilities.

25.     Devereux regularly receives state and federal funding. Several examples include: funding from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program,[10] funding from "a combination of contracts and private foundation and government grants, including the U.S. Department of Education, Office of Special Education Programs" for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional Training and Research),[11] grants from the Pennsylvania Department of Education to develop programs for Devereux CARES, which has been licensed as an "Approved Private School,"[12] and a $40.2 million contract from the U.S. Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[13]

**B.      QualityHealth Staffing, LLC**

26.     QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc. QualityHealth is headquartered in King of Prussia, Pennsylvania.

---

[10] https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited June 2, 2022).
[11] https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited June 2, 2022).
[12] https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited June 2, 2022).
[13] https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited June 2, 2022). While this contract was still active as of August 2020, the *Inquirer* reported the contract abandoned as of October 2020).

27.     In April 2018, Devereux's newly-appointed President and CEO, Carl E. Clark II, announced an organizational redesign effort and expansion of its leadership team. The first phase of this redesign began in part with the launch of QualityHealth.[14]

28.     QualityHealth was formed to address the challenges related to recruiting and retaining individuals to work in the field of behavioral health. By providing "temporary, temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to fulfill roles in a timely manner and who experience difficulty in keeping up with the constant changes in employment regulation," QualityHealth aims to allow organizations to "focus on their mission of helping others, rather than spending time on staffing and employment issues."[15]

29.     Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as CEO of QualityHealth.

30.     At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control.

## FACTUAL ALLEGATIONS

31.     Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Devereux programs. Across its 21 campuses in 13 states, Devereux offers hundreds of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for

---

[14] https://www.devereux.org/site/SPageServer/?pagename=redesign_2018 (last visited June 2, 2022).
[15] https://www.qhstaffing.com/about-us/ (last visited June 2, 2022).

youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[16]

32.     Many parents send their children to a Devereux program because Devereux holds itself out as having expertise in supporting children with disabilities.[17] For many foster youth, their placement in a Devereux facility was the result of a series of decisions in the child welfare system.[18] Devereux offers several programs specifically tailored for youth who are under the custody of the state due to parental abuse or neglect.[19]

33.     Devereux CEO Carl Clark has admitted that, "Most of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[20]

34.     For the children who were abused at a Devereux facility, it was almost impossible to get help or stop the abuse because Devereux reportedly limited the contact many of them had

---

[16] https://www.devereux.org/site/SPageServer/?pagename=centers (last visited June 2, 2022).

[17] https://web.archive.org/web/20210307054101/https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited June 2, 2022).

[18] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited June 2, 2022).

[19] https://web.archive.org/web/20210307054101/https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited June 2, 2022).

[20] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

with the outside world.[21] As Plaintiff Jane Doe 4 (below) has reported, when she was allowed to call home, Devereux staff warned her that they would be on the line during the call and if she spoke badly about the program, they would disconnect the call and she would not be allowed to return home.

35. Nor was there any clear and safe mechanism by which victims could report abuse within Devereux; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.[22]

36. Many of the children who were abused at Devereux were vulnerable, intellectually disabled, and already fleeing from abuse. Children with an IQ score below 70 are considered intellectually disabled.[23] Devereux is accused of abusing children with IQs as low as 50.[24]

37. Devereux staff members also took advantage of children who had already been victims of sexual abuse and were at Devereux to seek healing.[25] As reported by the *Philadelphia Inquirer,* "A 15-year-old girl in a Devereux Florida program designed for sex-trafficking victims

---

[21] *Id.*

[22] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

[23] MENTAL DISORDERS AND DISABILITIES AMONG LOW-INCOME CHILDREN 169 (Thomas F. Boat & Joel T. Wu eds., The National Academies Press 2015), https://www.ncbi.nlm.nih.gov/books/NBK332882/pdf/Bookshelf_NBK332882.pdf (last visited June 2, 2022).

[24] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

[25] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited June 2, 2022).

said she was raped twice by a staff member in 2017."[26] Plaintiff Jane Doe 4, who had been

sexually abused when in foster care, was similarly sexually abused by staffers, as detailed below.

Staff took advantage of these victims' vulnerability and emotional trauma from past abuse. When

these students were looking for adults whom they could trust and who made them feel safe, they

were instead horrifically exploited.[27]

38.     The power differential between children with physical, emotional and/or

intellectual disabilities, on the one hand, and behavioral health staff on the other is distinctively

extreme. Youth with disabilities are easily targeted because they are more likely to be perceived

as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has

limited communication abilities or cognitive impairments. Especially in a group home or

residential treatment setting, abuse can more easily be hidden and children may have limited

access to police, advocates, or social services representatives who can intervene.[28]

39.     As reported by the *Philadelphia Inquirer,* Devereux staff have been accused of

grooming children whom they abused; for example, they would offer children food,[29] which was

at other times withheld from children as a form of punishment. In describing one 43-year-old

staff member's abuse of a girl "on the cusp of 15," the *Philadelphia Inquirer* reported, "She was

flattered when he brought her gifts—an MP3 player, a necklace, a cell phone. He told her never

---

[26] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[27]  *Id.*
[28] https://www.childwelfare.gov/topics/can/factors/ (last visited June 2, 2022).
[29] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 2, 2022).

2416825.6

to include his name in text messages—just his initials. They exchanged dozens of love letters."[30]
The *Philadelphia Inquirer* further reported, "Instead of rigorously investigating red flags,
Devereux repeatedly failed to identify clear signs that a staffer may be grooming or sexually
abusing a child, reporters found. The abuse often continued—or even escalated."[31]

40.    Despite Defendant's awareness of decades of systematic sexual and physical
abuse of children in its care, Devereux has failed to enact appropriate uniform national and
system-wide protocols and policies to ensure the safety of its youth.[32] Devereux acted with an
extreme disregard for the wellbeing of children in its programs by failing to properly screen,
hire, and train employees, failing to report known abuse of youth in Devereux facilities, and
ignoring and covering up complaints alleged against it regarding child abuse.[33]

41.    Devereux has admitted that it was aware of repeated incidents of abuse within its
programs, as stated in the CEO's public response to the *Philadelphia Inquirer* Report.[34] Despite
this keen awareness of decades of systematic sexual and physical abuse of children in its care,
Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example,
after a Devereux staff member raped a 15-year-old girl at Devereux Georgia in 2012, the
company created a seven-page document that identified risk reduction strategies it planned to
implement, including training staff on sexual reactivity, developed a training video regarding

---

[30] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth,
Devereux staff abused children in their care for years – while red flags were dismissed,* THE
PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-
health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] "Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of
Resident Safety,
(https://web.archive.org/web/20210616231654/https://www.devereux.org/site/SPageServer/?pag
ename=response_to_safety (last visited June 2, 2022).

supervision lapses leading to sexual assaults, and adopted the "Diana Screen" program to evaluate new employees. But when the victim sued Devereux, the vice president of operations/executive director of the Georgia campus testified at a jury trial, according to a news source, that she was unaware of new staff trainings regarding sexual reactivity and had no knowledge of training videos about supervision lapses.[35] Reportedly, she also testified at the jury trial that Devereux declined to adopt the Diana Screen method, which cost less than $30 to administer.[36]

42.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.[37]

43.     The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (e.g., physical, emotional, and sexual abuse) committed within the context of the institution.[38]

---

[35] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[36] *Id.*
[37] *Id.*
[38] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited June 2, 2022); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited June 2, 2022)).

44.     Indeed, Devereux's culture of indifference to the safety and well-being of its

patients has caused abuse and sexual violence to flourish at Devereux for decades.[39] This toxic

culture continues to thrive to this day,[40] even affecting staff. Employees and former employees

have posted reviews on Glassdoor.com, including a former Special Education Teacher who rated

Devereux two out of five stars, complaining on December 14, 2019 about the "violent"

environment and "minimal accountability," including the fact that "[m]ale staff are heavily relied

upon to deescalate with minimal support from management. If staff aren't following expectations

there are no consequences."[41]

45.     Another former employee who worked at Devereux as a Licensed Practical Nurse

gave Devereux one out of five stars as an employer on May 29, 2018, and reported that:

> Devereux continues to put themselves out there as such a carding foundation for their
> clients . . . it's a cut throat intimidating, unsafe environment . . . very high turnover rate
> because they will overwork you, put you in unsafe situations no matter how much
> training they give you, when something goes wrong it's your fault no matter what
> happened . . . there isn't enough staff to take care of their clients properly and the nursing
> department who are supposed to be supportive of you and help take care of the clients
> treat the site nurses like garbage. . . stay away and protect your license and your back . . .
> run, don't walk away![42]

46.     A former DCP at a Devereux facility in Rutland, Massachusetts gave Devereux

one of five stars as an employer, and reported in 2018 that:

> Frontline staff are taken advantage of, put in dangerous situations and penalized for
> speaking up. Work is very tiring, often resulting in injuries and culture is that it's
> frowned upon and sometimes discipline to use sick time [sic]. Leadership changes every
> week. They are good at making things look good but scratch beneath the surface and a lot
> of very concerning stuff going on with kids and staff. I was fired for calling out sick

---

[39] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[40] *Id.*
[41] *See* Exhibit 1 hereto.
[42] *See* Exhibit 2 hereto.

when I didn't have enough sick time. So much for 'caring' for people. Staff care way more about the kids than management and leadership. They prioritize profit and saving dollars. Kids placed inappropriately just to fill beds.

**Advice to Management**

Consider having some integrity, for the kids if not anything else.[43]

47.     These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Devereux program or facility across the nation.[44] This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.[45]

48.     Children arrive at Devereux facilities seeking treatment, healing, and belonging. For decades, Devereux has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.[46]

A.     <u>**Devereux represented that it would provide children with a safe environment.**</u>

49.     Devereux boasts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[47] Devereux promised student learners compassion, knowledge, collaboration, dedication, learning, and progress.[48] Devereux provided hope to children who had mental health issues—along with their parents—touting itself as "one of the largest and most advanced behavioral healthcare

---

[43] *See* Exhibit 3 hereto.

[44] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

[45] *Id*

[46] *Id.*

[47] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited June 2, 2022).

[48] *Id.*

organizations in the country" with "a unique model that connects the latest scientific and medical advancements to practical, effective interventions in the treatment of behavioral health.[49]

50.     Children and their parents also trusted that patients would be kept safe based on Devereux's claims that "the safety and well-being of the children, adolescents and adults entrusted to our care is of the utmost importance."[50] Devereux advertises that it has a "robust and comprehensive screening process" for potential Devereux employees, and that its employees have a "commitment to treating and supporting our individuals through patience, compassion and the highest quality clinical care and treatment in the field."[51]

### B.     Devereux and its staff members broke patients' and families' trust.

51.     Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September 24, 2020, the City of Philadelphia announced that all youth would be removed from Philadelphia-area residential care facilities operated by Devereux.[52]

52.     Allegations of abuse at Devereux's facilities include:

   a.     As reported by the *Philadelphia Inquirer,* a Devereux staff member was

          charged with sexually abusing four children at a facility in Texas in

---

[49] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited June 2, 2022).
[50] *Our Commitment to Safety and Security*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited June 2, 2022).
[51] *What it Takes to Become a Devereux Employee*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=what_it_takes (last visited June 2, 2022).
[52] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited June 2, 2022).

2416825.6

2019.[53] One of the children was 12 years old.[54] Staff also allegedly

threatened to beat up a 16-year-old girl if she told anyone about the

abuse.[55] KPRC 2, a local Houston, TX news station, reported that the

former Devereux staff member was being held "on two counts of sexual

assault of a child, two counts of aggravated sexual assault of a child and

two counts of indecency with a child involving sexual contact."[56]

b.    As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux

staff member at an Arizona facility sexually abused three girls in their

bedrooms and in the laundry room.[57] ABC15, a local Phoenix, Arizona

news station reported that the former Devereux staff member was being

held on "multiple charges of aggravated assault, sexual abuse and sexual

conduct with a minor."[58]

c.    In 2018, a 16-year-old boy with autism and developmental delays was

reportedly sexually assaulted by Devereux Staff at the Brandywine

---

[53] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[54] *Id.*
[55] *Id.*
[56] Bill Barajas, *Mental health worker faces slew of charges after being accused of sexually assaulting 4 children*, CLICK2HOUSTON.COM, https://www.click2houston.com/news/local/2019/12/20/mental-health-worker-faces-slew-of-charges-after-being-accused-of-sexually-assaulting-4-children/  (last visited June 2, 2022).
[57] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[58] Joe Enea, *Behavioral health worker accused of sexually abusing young female patients in Phoenix*, ABC15 ARIZONA, https://www.abc15.com/news/crime/pd-behavioral-health-worker-accused-of-sexually-abusing-young-female-patients-in-phoenix (last visited June 2, 2022).

facility,[59] located in Glenmoore, Pennsylvania.[60] The boy spent most of his childhood in therapy learning how to do things like grip buttons and zippers. One day, he fled the Glenmoore facility while his abuser at Devereux chased him in a van. He was able to run to his program supervisor's office. He counted backwards, a technique he had learned to calm himself, and told the supervisor that a Devereux staff member had been sexually assaulting him and another 14-year-old child, who he saw as his "little brother." The boy tried to kill himself several times since his abuse at Devereux.[61] As reported by the *Philadelphia Inquirer*, the boy's abuser was sentenced to eight years in prison for abusing him and two other 14-year-old children.[62]

    d.    In 2017, a Devereux staff member was accused of raping a 15-year-old victim of child sex trafficking at Devereux's Viera, Florida facility.[63] The victim had previously reported this staff member's increasing sexual misconduct towards her, but Devereux staff members dismissed her

---

[59] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

[60] *Emotional and Behavior Health Challenges*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_services_for_children_adolescents_bh (last visited June 2, 2022).

[61] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

[62] *Id.*

[63] *Id.*

complaints.[64] After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse.[65] After being re-traumatized at Devereux, she was again sex-trafficked.[66] The Devereux staff member whom the student accused of raping her on campus came and found her through her sex trafficking name, and allegedly sexually abused her once again.[67] As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[68]

e.   In around 2014, a Devereux staff member and "married father with a degree in theology" sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. In particular, the staff member groomed his victim, including by exchanging "love letters" of which other Devereux staff members were aware,[69] protecting the victim from the

---

[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*

employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to write more letters to him because that "could get him in trouble."[70] The *Philadelphia Inquirer* further reported, "A month after [the victim] was told to apologize to [the staff member], she was home for Thanksgiving when the staffer asked her to send him naked photographs of herself."[71] On her next home pass, the staff member told the victim to meet him in Southwest Philadelphia. He took her shopping, buying her clothes and sneakers. He then drove her to an alley and sexually assaulted her in his car before he dropped her off at a bus station to find her way home."[72] The staff member continued to abuse the victim when she returned to Devereux, where he was alone with her almost every day.[73] The victim's roommate told her therapist what was going on, and Devereux staff members found a hidden cell phone with "naked photos and explicit messages between the two."[74] "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a

---

[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[74] *Id.*

minor, sexual abuse of children and corruption of minors after trial in September, 2016."[75,76]

f.    In 2012, another Devereux Staff member orally raped a girl through her bedroom window twice in one night in a Devereux Georgia facility.[77] According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[78]

g.    In 2001, as reported by the *Philadelphia Inquirer*, a Devereux staff member allegedly raped a 15-year-old girl in a staff room when she was half-asleep and heavily medicated at the campus in Malvern, Pennsylvania.[79] She was able to call 911.[80] Devereux staff allegedly promised her father that this would never happen again.[81] Two weeks later another staff member allegedly raped her in the same staff room.[82] The staff member was high at the time and Devereux was allegedly aware that he had a drug problem.[83] The *Philadelphia Inquirer* reported that in a letter from prison, the staff member said, "My employer was aware of my

---

[75] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited June 2, 2022).
[76] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*

drug problem and was in the process of getting me help."[84] The staff

member impregnated his victim, who was then further traumatized by her

abortion.[85] Many years later she still feels that she does not deserve to

have children.[86] She considers the year she was raped at Devereux to be

the year that she died.[87]

h.   As reported by the *Philadelphia Inquirer*, "In 2000, a 14-year-old at

Devereux's Malvern, Pennsylvania campus confided to a male staffer that

she'd been abused by a relative; that DSP began molesting her and leaving

used condoms on her windowsill, [the victim] said in an interview: 'I told

them it was him, but they never made a report, ever.'"[88]

i.   As reported by the *Philadelphia Inquirer*, "Altogether, police said 16 girls

had been sexually abused by staff at a Devereux facility located in

Deerhaven, New Jersey, between 1996 and 1999."[89] In a 1997 instance,

the *Philadelphia Inquirer* reported, "a supervisor was walking a 13-year-

old to the nurse's station when his walkie-talkie crackled, and the girl

---

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.*; *see also* BKTS at 143 ("Adults who had been abused as children often had trouble concentrating, complained of always being on edge, and were filled with self-loathing. They had enormous trouble negotiating intimate relationships, often veering from indiscriminate, high-risk, and unsatisfying sexual involvements to total sexual shutdown. They also had large gaps in their memories, often engaged in self-destructive behaviors, and had a host of medical problems.").

[88] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2021).

[89] *Id.*

began to cry. The voice on the supervisor's radio belonged to a 30-year-old staff member. He had molested her, the girl said."[90]

j.      According to a complaint filed in 2020, there were 13 more victims of sexual, physical, and verbal abuse in Pennsylvania in addition to the 41 reported by the *Philadelphia Inquirer* who were abused from 2004-2014.[91] The victims were as young as eight years old.[92] Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[93]

k.      In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-workers were accused of not reporting the incidents as required by law.[94] Allegedly, in one instance, a "27-year-old [staff member] threw a 16-year-old to the ground and struck the victim with her knees multiple times, causing the victim to suffer a broken arm."[95]

---

[90] *Id.*

[91] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 2, 2022).

[92] *Id.*

[93] *Id.*

[94] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients,* CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited June 2, 2022).

[95] *Id.*

l.      In 2016, a Devereux staff member in Viera, Florida faced child abuse charges for hitting and elbowing a child in the face multiple times, Florida Today reported.[96]

m.      Then, in 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child.[97] According to *Florida Today,* "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras."[98] A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[99]

**C.      Devereux failed to take steps to protect the children from abuse.**

53.      Devereux's centralized decision-making structure means rules, policies, procedures promulgated by the Senior Leadership Team govern the administration of all Devereux facilities nationwide.

54.      Devereux's failure to enact adequate policies to protect the children in its care, and its failure to adequately screen, hire, train, and supervise staff, caused harm across Defendant's facilities.

55.      Even Devereux's employees have observed the issues that its insufficient policies and failures have caused. One current employee, a Direct Support Professional, gave Devereux

---

[96] Rick Neale, *Devereux Viera staffer charged with striking girl, 14*, FLORIDA TODAY, https://www.floridatoday.com/story/news/2016/11/05/devereux-viera-staffer-charged-striking-girl-14/93343094/ (last visited June 2, 2022).

[97] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited June 2, 2022).

[98] *Id.*

[99] *Id.*

one out of five stars as an employer on Glassdoor.com on December 14, 2019, posting the

following review:

> There is absolutely no supportive infrastructure here, while the staff work with kids who
> are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting
> that way- I would be angry if I were them too. Some of the staff bully the kids, and
> occasionally, other staff. There is no support for reporting incidents. There is virtually no
> therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at
> 2:00 – many of the kids reported not having therapy for over a month, even though it is a
> residential TREATMENT center.  The staff are left completely on their own to structure
> the kids' days with no support from therapists. Staff egg on fights and threaten to restrain
> kids at every little sign of resistance. Kids have no choices, and there is no opportunity for
> them to engage in anything supportive of their growth and development. The job also pays
> little and uses that as leverage for people to work double shifts to gain overtime pay. Staff
> push themselves to exhaustion for the pay while working with kids who need A LOT of
> attention. Overall, extremely unsafe and unsupportive environment in so many ways.[100]

56.     A current employee who works as a Case Manager reviewed Devereux on

Glassdoor.com on April 23, 2019, giving it one out of five stars and complaining that, "Literally

you get thrown into a job that you know nothing about and are expected manage a huge caseload.

Impossible to function and maintain sanity."[101]

57.     As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the

company wasn't attracting the right employees."[102] For example, the Devereux Deerhaven, New

Jersey campus director told the *Daily Record* in 1985, "The problem is that the salaries that we

are able to pay our staff are so inadequate."[103]

58.     In fact, a January 17, 2021 listing Glassdoor.com showed that Direct Support

Professionals at Devereux facilities Pennsylvania have the potential for a rate increase to

---

[100] *See* Exhibit 4 hereto.
[101] *See* Exhibit 5 hereto.
[102] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth,
Devereux staff abused children in their care for years – while red flags were dismisse*d, THE
PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-
health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[103] *Id.*

$13.75,[104] and that an Autism Activity Counselor at Devereux would make $14.75-$16.82 per hour.[105] An employee working 40 hours per week, 52 weeks per year at $13.75 would take home a gross annual salary of $28,600. The poverty level for a family of four in Pennsylvania in 2022 is $27,750.[106] A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50 plus $1 shift [differential] if you work after 3pm and on weekends. Working 14 hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no meal breaks. Expect injuries from the kids. Management always telling you how to do better, not addressing moral[e] or high turnover. Lack of supervisors because of high turnover and low moral[e]. Benefits are expensive and you already at a very low (non-living wage.)[107]

59.     Another former Vocational Aide who worked at a Devereux facility in Woodbury, New Jersey gave Devereux one out of five stars, and reported in 2019 that, "[I]t is very hard surviving off of a paycheck coming from Devereux."[108] Also, the "rate increase" salary for Deveraux employees is only slightly higher than Pennsylvania's minimum wage of $7.25 per hour,[109] which is among the lowest in the nation and that has seen gubernatorial efforts to increase it on a phased basis to $12 per hour in 2022 with annual increases of 50 cents until reaching $15.00 per hour in 2028.[110]

60.     There is no excuse for Devereux to have allowed this systemic abuse in its facilities. Devereux had the funds to hire qualified employees, provide adequate staffing and

---

[104] *See* Exhibit 6 hereto.
[105] *See* Exhibit 7 hereto.
[106] https://dced.pa.gov/housing-and-development/weatherization/income-eligibility/ (last visited June 2, 2022).
[107] *See* Exhibit 8 hereto.
[108] *See* Exhibit 9 hereto.
[109] https://www.dli.pa.gov/Individuals/Labor-Management-Relations/llc/Documents/LLC-1%20REV%2009-20.pdf (last visited June 2, 2022).
[110] *See, e.g.,* https://www.govdocs.com/pennsylvania-15-minimum-wage-push-renewed/#:~:text=Tom%20Wolf%20in%20late%20January,wage%20rates%20in%20recent%20years (last visited June 2, 2022).

training, and to supervise its staff. Devereux receives more than $497 million per year and 95%

of its revenue is from government sources.[111] In the fiscal year 2020, Devereux received

approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was

supposed to be used for housing and treating children with psychiatric, intellectual, and

behavioral disabilities.[112] CBH, with which the City of Philadelphia contracts to place Medicaid

recipients in psychiatric residential treatment, paid Devereux $12.9 million in 2019 -- $7.7

million of which was for residential treatment facilities.[113]

61.     Despite the large amount of public funding that Devereux receives, Devereux has

severely understaffed its facilities.[114] For example, as reported by the *Philadelphia Inquirer*, a

staff member who was supposed to be responsible for only seven children in a shift would at

times end up caring for twenty children.[115] The supervision issues were so severe that a police

detective reportedly met with leaders at Devereux's Malvern campus to ask it to fix its staffing

issues.[116]

62.     Other staff failed to do their jobs, which included ensuring children's safety. As

reported by the *Philadelphia Inquirer,* Devereux staff seemed to disappear for hours and

---

[111] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited June 2, 2022).
[112] *Id.*
[113] *Id.*
[114] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[115] *Id.*
[116] *Id.*

regularly slept through their shifts.[117] As further reported by the *Philadelphia Inquirer,* some of them played video games for hours without checking on the students in their care even though that was part of their job.[118] It was further reported that instead of checking on students every 15 minutes during the night as required, some Devereux staff even came to work with sleeping bags and pillows so that they could sleep through the night.[119] One reason for these failures is that Devereux's staff was severely underpaid and had to work more than one job.[120] Meanwhile, at least one child was reportedly sexually abused in a closet.[121]

63.     As reported by the *Philadelphia Inquirer*, Devereux only paid its staff an average of $26,000 per year in 2017.[122] The low pay encouraged staff to work 16- hour shifts to earn overtime pay.[123] Because pay was so low, Devereux likely could not attract employees who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[124] For example, according to the *Philadelphia Inquirer*, a former Devereux staff member who worked at a facility in Georgia between 2011 and 2013 said in a deposition

---

[117] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited June 2, 2022).
[118] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).
[119] *Id.*
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.*
[124] *Id.*

recounted in the news report, "Because of the type of work that the staff does, they get burned

out. And the pay isn't great, so you don't get people in there who are professional."[125]

64.     Devereux put vulnerable children in danger by underpaying and overworking

staff, and inadequately supervising them, while receiving hundreds of millions in government

funding.

65.     Despite this unacceptable failure to ensure children's safety from staff and other

students, in 2018, Devereux campaigned to raise $1.25 million for a new facility, *Phoenix

Business Journal* reported.[126]

66.     Devereux announced later in 2020 that it had "received funding from the Florida

State Legislature to expand the organization's Commercial Sexual Exploitation of Children

(CSEC) program, which provides comprehensive treatment for children and adolescents who

have experienced emotional, physical or sexual trauma."[127]

67.     Devereux was aware of initiatives that it could adopt to protect its students from

abuse. It identified solutions such as increased training and employment screenings but failed to

implement these measures for years.[128] Devereux also allowed boys to stay in rooms with walk-

in closets even after they had begun to remove such closets from other areas of the facilities due

---

[125] *Id.*

[126] Angela Gonzales, *Nonprofit to break ground on $1.25M residential treatment center in Scottsdale*, PHOENIX BUSINESS JOURNAL, https://www.bizjournals.com/phoenix/news/2018/04/15/nonprofit-to-break-ground-on-1-25m-residential.html (last visited June 2, 2022).

[127] *Devereux Florida Receives Funding to Support Sexually Exploited Youth*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=csec_2020_funding (last visited June 2, 2022).

[128] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 2, 2022).

to pervasive abuse. As the *Philadelphia Inquirer* reported, a boy was assaulted in one of these walk-in closets that had not yet been removed.[129] Because Devereux failed to take even these basic measures to protect its students, many students will carry the emotional and physical scars of Devereux's inaction for the rest of their lives.

**D.      Plaintiffs Were Abused in Devereux Facilities.**

68.      Plaintiffs Thomas, Standley-Toro, John Doe 4, Jane Doe 4 and Jane Doe 7 were abused during their treatment at Devereux.

**1.      Plaintiff Raekwon Thomas**

69.      Plaintiff Raekwon Thomas was 17 years old when he was physically and sexually abused by staff members in a residential Devereux treatment center in Glenmoore, Pennsylvania.

70.      Devereux staff routinely used excessive force when restraining Plaintiff Thomas. This included Devereux staff picking him up, dragging him to his room, and physically assaulting him in his room. On one occasion, a staff member strangled him.

71.      On his first day at Devereux, a manager grabbed Plaintiff Thomas from behind, pushed him into his room, and slammed him into the wall while holding his hands behind his back. The manager then threated that he would "beat the shit" out of Plaintiff Thomas if he reported the incident.

72.      In August of 2016, a staff member physically assaulted Plaintiff Thomas in front of a facility supervisor. Instead of stopping the assault, the supervisor encouraged the staff member to assault Plaintiff Thomas.

---

[129] *Id.*

73.     In September of 2016, a Devereux staff member physically assaulted Plaintiff Thomas after Plaintiff Thomas attempted to report him for forcing Devereux clients to stay in their rooms all day. The staff member then placed Plaintiff Thomas in a headlock.

74.     In November of 2016, Plaintiff Thomas was assaulted by his roommate in the facility gym. Devereux staff took a picture of the injuries, but no report was filed.

75.     A female Devereux staff member inappropriately touched Plaintiff Thomas on multiple occasions.

76.     On Plaintiff Thomas' birthday in July of 2017, the female staff member walked into his room and attempted to put her hands down his pants and touched his chest. Plaintiff Thomas reported the incident but Devereux failed to take any action.

77.     The same female staff member required male residents to shower with the doors open and demanded they strip in front of her. On a separate occasion, she waited inside the bathroom and outside the stall Plaintiff Thomas was in, and waited for him to come out.

78.     At no time could, nor did, Plaintiff consent to any of these horrendous acts through which he was forced to suffer.

### 2.     Plaintiff Austin Standley-Toro

79.     Plaintiff Austin Standley-Toro was 12 years old when he was physically and sexually abused by staff members and peers in a residential Devereux treatment center in Woodville, Florida.

80.     Devereux staff routinely used excessive force when restraining Plaintiff Standley-Toro. This included repeatedly striking the residents until they could no longer take the abuse. In addition, the staff would play "games" with Plaintiff Standley-Toro and the other residents by "frogging" them—sticking their middle knuckle out and striking the residents in the back of their heads with them in the hopes of getting a rise out of the residents (particularly when the resident

was doing something important, such as attending a class or eating). Some residents complained about the abuse to other staff members, which resulted in them being further abused as the staff members would grab them by their arms and knee them in their backs.

81.    During Plaintiff Standley-Toro's stay, a 15-year old boy was placed in his room, which Plaintiff Standley-Toro already shared with three other children between the ages of 9 and 11. The new boy was placed at Devereux for molesting his foster brothers. On one occasion, Plaintiff Standley-Toro walked into the room to see the new boy molesting one of his roommates. Plaintiff Standley-Toro reported the molestation to Devereux staff, but they refused to move the new boy out of the room. The new boy raped Plaintiff Standley-Toro multiple times, as well as the other boys in their room.

82.    Plaintiff Standley-Toro continues to live with the trauma, humiliation, and anguish of these deplorable acts.

83.    Devereux staff also administered a cocktail of heavy medications to all residents, including Plaintiff Standley-Toro, that, based on Plaintiff Standley-Toro's understanding, was intended to allow the staff to abuse the patients and students in Devereux's care without resistance.[130]

84.    At no time could, nor did, Plaintiff Standley-Toro consent to any of these horrendous acts through which he was forced to suffer.

---

[130] Antipsychotic medications are often used to make abused children more tractable, instead of properly and appropriately dealing with the underlying source of their behavioral issues. But "chemical restraint" via these medications has significant downsides: they interfere with motivation, the ability to learn, and the ability to attach and interact socially, which are key elements of healthy development. *See* BKTS at 37.

3.      **Plaintiff John Doe 4**

85.      Plaintiff John Doe 4 was 12 years old when he was physically abused and inappropriately touched by staff members and peers in a residential Devereux treatment center in Westminster, Colorado.

86.      Plaintiff John Doe 4 was placed at Devereux by the Campbell Unified School District as an Individualized Educational Plan placement for mental health impairment.

87.      While Plaintiff John Doe 4 was at Devereux, he was subjected to physical abuse through being repeatedly restrained in inappropriate ways that caused him physical harm.

88.      One of Plaintiff John Doe 4's teachers repeatedly placed Plaintiff John Doe 4 in seclusion rooms unnecessarily. Many of the seclusion rooms in which John Doe 4 was placed were unsanitary, fecal-infested, and smelled strongly of urine. These placements adversely affected Plaintiff John Doe 4's education by forcing him to miss classroom time. In addition, Plaintiff John Doe 4's Devereux therapist told Plaintiff John Doe 4's mother that the teacher should not be working at Devereux and was not good for children. According to Plaintiff John Doe 4's mother, the Devereux therapist said that she was trying to get that teacher out of the classroom.

89.      Despite Devereux's policy that staff should not touch patients, Devereux staff repeatedly subjected Plaintiff John Doe 4 to inappropriate "tickling" and touching. This caused Plaintiff John Doe 4 tremendous discomfort.

90.      Plaintiff John Doe 4 was placed on many different suicide watches, but Devereux staff encouraged Plaintiff to run away from the facility any way.

91.      While Plaintiff John Doe 4 was at the Westminster, Colorado facility, Devereux staff did not wear face masks, which caused Plaintiff John Doe 4 to contract COVID-19. Indeed,

COVID-19 was rampant in the facility and staff did not follow appropriate protocols to protect the children.

92.     While at Devereux, Plaintiff John Doe 4 pulled out half his hair and began ripping out his toenails, and was not supervised as he cut his wrists and attempted to commit suicide.[131] Devereux only informed Plaintiff John Doe 4's mother that her son pulled his hair out and cut himself one time—she was not informed of the extent of or chronic nature of this behavior. She only realized the extent of the harm when she visited him and saw numerous cuts all over his arms. Her son later told her that he engaged in self-harm many times and was unsupervised.

93.     Plaintiff was unable to wash his clothes at Devereux, nor did Devereux staff wash his clothes for him.

94.     Devereux staff withheld food from Plaintiff John Doe 4.

95.     Plaintiff John Doe 4 developed tics while at Devereux. As a result of his placement at Devereux, he now makes random movements with his head and face, and has become defiant, aggressive, and impulsive.[132]

96.     While Plaintiff John Doe 4 was at Devereux, he was subjected to verbal abuse by staff who threatened and cursed at him. A few days to a week before his discharge, Plaintiff John Doe 4 told his mother about the verbal abuse, the withholding of food, and the uncleanliness.  On

---

[131] Major physical illnesses, such as self-harming (biting, cutting, burning, hitting, pulling hair out, picking skin until it bleeds, eating disorders, etc.) often present in trauma victims in higher rates than the regular population. *See* BKTS at 158.

[132] This reaction is not unusual. The signs and symptoms of chronic trauma—such as that prevalent and pervasive at Devereux—are well established: biological and emotional dysregulation, failed or disrupted attachment, problems staying focused and on track, and a deficient sense of coherent personal identity and competence. *See* BKTS at 166. This leads children who have been abused to exhibit disruptive, oppositional, and aggressive behavior. *Id.* at 158-59. Indeed, "[w]hen children are oppositional, defensive, numbed out, or enraged," they are simply "repeat[ing] action patterns that were established to survive serious threats." *Id.* at 86.

2416825.6

one occasion, a staff member became very upset and yelled at Plaintiff John Doe 4 and another

resident to "Shut the f*** up." According to what Plaintiff John Doe 4 told his mother, Devereux

staff members would "lose it" when the kids acted out.

97.     During another incident, a Devereux staff member saw Plaintiff John Doe 4 in the

parking lot during a run-away attempt. The staff member told Plaintiff to "run away then"

instead of preventing Plaintiff John Doe 4 from leaving the facility.

98.     Plaintiff John Doe 4's mother reported the abuse that John Doe 4 endured to:

Plaintiff John Doe 4's Devereux therapist, Devereux's Business Development Director; and a

Devereux manager. She also reported the abuse to the Westminster, Colorado Police

Department; the Campbell Unified School District in California; the Colorado Department of

Public Health and Environment; Plaintiff's education attorney; and a federal agency she cannot

recall.

99.     After leaving Devereux, Plaintiff John Doe 4 has been on suicide watch many

times and has had to go to crisis centers multiple times. This has caused tremendous difficulty to

his family. On one occasion, Plaintiff John Doe 4 attempted a violent suicide attempt, which his

mother had to prevent. This was traumatizing to his family. His brother is now in counseling

because of these violent acts.

100.    At no time could, nor did, Plaintiff John Doe 4 consent to any of these horrendous

acts through which he was forced to suffer.

### 4.    **Plaintiff Jane Doe 4**

101.    Plaintiff Jane Doe 4 was 14 years old when she was sexually, physically, and

emotionally abused by Devereux staff during her roughly one-month placement at Devereux in

Westminster, Colorado between about April 20 to May 8, 1995.

102.    Plaintiff Jane Doe 4's parents sent her to Devereux to receive behavioral support after she had run away from home because of family issues. Before age 14, Plaintiff Jane Doe 4 had been homeschooled and lived in two different countries. English was her second language, and she struggled with communication. Plaintiff Jane Doe 4 did not know where her parents were taking her, and upon arrival, Devereux staff told her that she was not loved by her parents, who did not want her anymore, and that she would be forced to live at Devereux "forever."

103.    Devereux staff acted aggressively towards Plaintiff Jane Doe 4, causing her to fear even making eye contact with staff members. On one occasion, Devereux staff members found Plaintiff Jane Doe 4 smoking a cigarette outside. They punished her by forcing her to do jumping jacks naked in a padded room and threatened her with a five-point harness restraint and forced drugs if she refused. Devereux staff then made her sit alone at a small school desk from morning until night for seven days and write "I will never smoke cigarettes again" 10,000 times.

104.    Plaintiff Jane Doe 4 tried to tell Devereux staff that she had experienced abuse at home. Devereux staff did not report or address this abuse or provide Plaintiff Jane Doe 4 with any resources to help her.

105.    Devereux staff drugged Jane Doe 4 with Paxil and a powerful ADHD medication without any discussion or consent. Devereux staff would check each patient's mouth to ensure that they swallowed all pills that they were given. Nearly every child at Devereux in Westminster, Colorado was drugged with some sort of medication during Plaintiff Jane Doe 4's stay.

106.    Plaintiff Jane Doe 4 did not receive the therapy or services that her family had anticipated when placing her at Devereux. Instead, Plaintiff Jane Doe 4 recounts sitting in her room for days on end, receiving no services whatsoever. One day when there was an inspection

of the Devereux facility, staff members brought out a game of Monopoly for the patients to play.

As soon as the inspection ended, staffers made the children put the game away immediately,

telling them they could only bring it out again during the next inspection. Plaintiff Jane Doe 4

recalls only attending one "group session" during her stay at Devereux, during which the patients

were asked to speak about how they were going to change their behavior—not constituting any

form of actual mental health treatment.

107.    Devereux staff also openly spoke about various aspects of patients' private

medical and personal histories. They would mock patients and make fun of different children's

medical information in front of other patients. Devereux staff would warn the female patients

that different male patients had histories of sexual violence, advising the young girls to "be

careful" around them.[133] Plaintiff Jane Doe 4 recalls these staff members frequently complaining

about the number of hours they were working, their long shifts, and the meager pay they were

receiving.

108.    During orientation, Devereux staff told Jane Doe 4 that when male patients were

"going to masturbate," they needed to tell two staff members who would watch them. As a

female patient, Plaintiff Jane Doe 4 was watched by male staffers while she showered. She felt

uncomfortable because they were watching voyeuristically.

109.    During Plaintiff Jane Doe 4's time at Devereux, her roommate began screaming

during the night because the staff would not let her sleep with her stuffed teddy bear. Plaintiff

Jane Doe 4 witnessed Devereux staff strap her roommate's hands and legs to the bed during the

---

[133] Living in such a reality has tremendous negative consequences. Research shows that "[t]he insidious effects of constantly elevated stress hormones include memory and attention problems, irritability, and sleep disorders," in addition to physical ailments and "acting out" or "numbing out" behaviors. BKTS at 46.

night and put oven mitts on her hands. Her roommate was unsupervised during an extended period of time, during which she went to the bathroom and hung herself from the shower curtain. In addition to Devereux abhorrently allowing this incident to occur, Jane Doe 4 was traumatized by her roommate's suicide.

110.    When Devereux staff told Plaintiff Jane Doe 4 that she would be released to return home to her family, they allowed her to have one phone call home. Devereux staff warned Jane Doe 4 that they would be on the line during the call and if she spoke badly about the program or told her parents she "didn't like it," this would demonstrate Jane Doe 4's lack of progress, they would disconnect the phone, and she would not be allowed to return home.

111.    Devereux staff revealed to Plaintiff Jane Doe 4's family that prior to entering Devereux, she had been taking birth control medication. Devereux staff immediately discontinued Jane Doe 4's birth control medication. Roughly two months after returning home, Jane Doe 4 discovered she was pregnant.

112.    Jane Doe 4 spent an entire year after she returned home grappling with the trauma and suffering she experienced during her placement at Devereux. She finally mustered the ability to tell her parents about the abuse she endured, describing her time at Devereux as "marking the end of [her] childhood."

113.    Plaintiff Jane Doe 4 has not forgotten, nor will she forget, her traumatizing experience at Devereux where her childhood was taken from her without her consent. Plaintiff Jane Doe 4 will continue to suffer from this trauma and abuse for the rest of her life.[134] She also

---

[134] Following her time at Devereux, Jane Doe 4 was raped. Tragically, this is not unusual: sexually abused children sexually mature earlier and are prone to suffer repeated instances of sexual abuse, in part because the prior abuse and trauma negatively affects their brain wiring such that they cannot accurately perceive or react to future danger. *See* BKTS at 163-64. One

states that she wants to speak out on behalf of her peers who were also abused by Devereux staff, including those who died at a young age or received life sentences due to incidents that occurred at Devereux.

### 5.   **Plaintiff Jane Doe 7**

114.   Plaintiff Jane Doe 7 was 17 years old when she was sexually, physically, and emotionally abused by Devereux staff during her approximate five-month placement at Devereux in Malvern, Pennsylvania from about August 2010 to January 2011.

115.   Plaintiff Jane Doe 7 was moved to Devereux from another placement, located in Pittsburgh, Pennsylvania, but was not told the reason for her transfer. She was only told that if she gave the transport staff "any issues" while being moved across the state, that she would be medicated to control her.

116.   When Plaintiff Jane Doe 7 first arrived at Devereux, she was placed in a bedroom along with Gatorade electrolyte beverages, which she had been prescribed. Within about 30 minutes of Plaintiff Jane Doe 7's arrival at Devereux, three girls came into her bedroom and tried to steal her beverages. They jumped on top of her and covered her head to prevent her from screaming. About 15-20 minutes later, a male staff member happened to walk into the room and see what was happening. He pulled Plaintiff Jane Doe 7 out of her room, shoved her into a staff office in the unit, and closed and locked the door behind him. She sat in the staff office alone for

---

study of sexually abused girls showed that compared with girls of the same age, race, and social circumstances, the abused girls showed "a large range of profoundly negative effects, including cognitive deficits, depression, dissociative symptoms [including numbing out], troubled sexual development [including hypersexuality] and self-mutilation." *Id.* at 162. And the landmark Adverse Childhood Experience (ACE) study shows that women who had an early history of abuse and neglect were seven times more likely to be raped in adulthood. V. Felitti, et al. "Relationship of Childhood Abuse and Household Dysfunction to Many of the Leading Causes of Death in Adults: The Adverse Childhood Experiences (ACE) study," *American Journal of Preventative* Medicine 14, no. 4 (1998) 245-58.

about 30 minutes until the staff member returned with a female staff member, who told Plaintiff Jane Doe 7 to go back to her room, but she refused. After about three more hours, Devereux staff moved Plaintiff Jane Doe 7 to a different unit.

117.    In Plaintiff Jane Doe 7's new unit, she had two roommates. A few days after she was placed in the new room, one of her roommates began to sexually assault her (and only did so when the third roommate was not in the room), beginning with the roommate putting her hands down Plaintiff Jane Doe 7's pants and "fingering her." The sexual assaults happened about four or five times, with each instance becoming progressively worse. Each time, Plaintiff Jane Doe 7 yelled, but no one came.

118.    In one instance, time, Plaintiff Jane Doe 7's roommate went to her bed and pulled her into a spare room where she made Plaintiff Jane Doe 7 lick her neck while putting her hands around Plaintiff Jane Doe 7's throat, choking her until she nearly passed out. When Plaintiff Jane Doe 7 tried to get away, the roommate kicked her in the lower back (with a medical boot she was wearing on an injured foot). Plaintiff Jane Doe 7 fell on the ground at which point the roommate grabbed her hair and pulled Jane Doe 7's face toward her vaginal area.

119.    After multiple assaults by her roommate, Plaintiff Jane Doe 7 told Devereux staff members about what her roommate was doing to her, but no one ever addressed them. The day after Plaintiff Jane Doe 7 reported the abuse, she was pulled out of a classroom and told to go to a social worker's office. There, she was told that both she and her roommate were being placed in new units. Plaintiff Jane Doe 7 was advised that she was being moved for "inappropriate behavior," which she denied. She tried to tell her story and asked to speak with her social worker, but was only told that she should not be "dating" another client so that the two needed to be separated.

120.    When Plaintiff Jane Doe 7 was moved out of her second unit, she was transferred back to the first unit to which she had been assigned when she arrived at Devereux. One of the girls who had jumped her when she first arrived was friends with her former roommate, and told Jane Doe 7 that she would receive an MP3 player from the former roommate if she beat up Plaintiff Jane Doe 7. For the rest of Plaintiff Jane Doe 7's time at Devereux, that patient continued to threaten her that she would beat her up.

121.    While Plaintiff Jane Doe 7 was at Devereux, she learned that a male staff member who worked the overnight shift alone began having a sexual relationship with a client. Upon learning of that staff member's misconduct toward a client, Plaintiff Jane Doe 7 felt compelled to stay up during the night for fear that the male staff member could assault her as well since he was not fired for his "relationship" with the other client and because he was the sole staff member in the unit during the night shift. Plaintiff Jane Doe 7 also recalls witnessing another Devereux client being scolded by a staff member for talking about what the "relationship" between the night shift employee and a client.

122.    Plaintiff Jane Doe 7 also had trouble getting sufficient sleep while at Devereux because of loud music, other residents yelling and running between rooms and the lack of a nighttime routine. The lack of nighttime staff available to supervise residents also contributed to the chaos at nighttime and Plaintiff Jane Doe 7's inability to get sufficient sleep.

123.    Plaintiff Jane Doe 7 had an eating disorder so that her treatment plan included a requirement for staff to supervise her for one hour following meals. However, her eating disorder worsened while she was at Devereux and she lost a significant amount of weight because staff failed to supervise her in accordance with the treatment plan and because of the trauma she experienced at Devereux.

124.    On one occasion while Plaintiff Jane Doe 7 was at Devereux, she attempted to commit suicide. However, "no one seemed to care" and Devereux staff never addressed her underlying issues.

125.    On the day that Plaintiff Jane Doe 7 turned 18 years old in 2011, she signed herself out of Devereux.

126.    Plaintiff Jane Doe 7 has not forgotten, nor will she forget, her traumatizing experience at Devereux, and will continue to suffer from this trauma and abuse for the rest of her life.

## **VICARIOUS LIABILITY**

127.    Devereux is vicariously liable for the tortious misconduct described herein by providing employment to staff who mistreated Plaintiffs.

128.    When Plaintiffs were physically and emotionally mistreated by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients, such as by employing medically improper, harmful restraining and seclusion techniques against Plaintiffs.

129.    Devereux staff members used their positions as employees of Devereux to enable mistreatment, including abuse, of Plaintiffs such that Devereux is vicariously liable for their conduct.

130.    Staff members at Devereux are charged with the care of children with physical, emotional, and/or intellectual disabilities and entrusted to keep them safe. But for their employment at Devereux, staff members would not have been in unsupervised situations with these young and vulnerable victims. Additionally, the responsibilities associated with staff members' employment has enabled them to exert excessive and abusive authority over victims, including Plaintiffs.

131.    Staff members took advantage of the authority associated with their responsibilities at Devereux to Plaintiffs.

132.    Devereux staff members' abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

133.    Devereux ratified their staff members' abusive conduct toward Plaintiffs by failing to discipline, take corrective action, and/or report the child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by their staff, as described above.

134.    These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within their facilities. These repeated instances of abuse alerted or should have alerted Devereux that other staff members may be abusing students.

135.    In addition to the long, repeated history of abuse by staff members, Devereux knew that their patients, including Plaintiffs, were particularly susceptible to mistreatment as youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

136.    As a direct and proximate result of Devereux's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer physical and emotional pain and distress. Devereux is vicariously liable for the intentional harms described herein.[135]

---

[135] Plaintiffs clarify which claims are brought vicariously in the Counts below but, to avoid any confusion, include this separate explanation of the theory of liability.

## CAUSES OF ACTION[136]

## COUNT I
### Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
### Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment

137.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

138.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

139.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

140.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

141.    DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

142.    Plaintiffs are "persons" under Title IX.

143.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and

---

[136] All claims herein are brought on behalf of all Plaintiffs unless otherwise indicated.

residential education programs. Education is a primary aspect of the services Devereux provides

to its patients and residents, placing Devereux squarely in the purview of Title IX.

144.    Defendant receives federal financial assistance for its education programs and is

therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20

U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

145.    Under Title IX, Devereux was required to promptly investigate and address

allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its

programs.

146.    Before Plaintiffs were abused while at Devereux, Devereux had actual knowledge

of prior sexual abuse, harassment, and assault of youth in their facilities, dating back decades.

147.    Based on these prior repeated incidents of sexual abuse and assault, and

Defendants' knowledge of their own failure to have and/or implement proper policies to prevent

and/or respond to incidents of sexual abuse and assault, Defendants had actual knowledge of the

substantial, increased, above-societal baseline risk that Plaintiffs would be sexually harassed,

abused, or assaulted at Devereux.

148.    With this knowledge, Devereux had the authority—and obligation—to address the

pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures,

including by:

a.    Implementing and enforcing best-practice policies and procedures for the

prevention of, and proper response to, incidents of sexual abuse and

harassment at its facilities;

b.    Addressing children and families' prior reports of sexual abuse and

encouraging youth to openly report sexual advances by staff members;

c.      Thoroughly investigating and terminating the employment of staff

members with known complaints of prior sexual abuse and harassment of

youth;

d.      Increasing the quality of staff supervision, particularly during vulnerable

nighttime hours, and allowing staff members to take youth on

unsupervised outings where sexual abuse occurred;

e.      Maintaining appropriate numbers of staff to ensure that there were no

blind spots where abuse could go undetected; and

f.      Improving Devereux's physical facilities to increase visibility such that no

concealed areas remained where abuse could occur undetected.

149.    Devereux's failure to address the substantial risk of sexual abuse in its programs

and facilities, given prior complaints and reports about past abuse, and its failure to set

appropriate sex discrimination policy, was clearly unreasonable in light of the known

circumstances.

150.    Plaintiffs were subject to sexual harassment, abuse, and assault by Devereux staff

members and residents while patients and/or residents at Defendant's facilities and programs as

described above, including: experiencing unwelcome conduct of a sexual nature; rape of a minor

student; and male staff watching naked girls shower.

151.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux

constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the

U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form

of sex discrimination covered by Title IX.[137]

---

[137] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html (last visited June 2, 2022).

152.     Devereux was on actual notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX. Devereux staff directly witnessed, perpetrated, or were told about the abuse of each Plaintiff.  Further, Plaintiffs Standley-Toro and John Doe 4 (through his parent) complained directly to Devereux staff that they were being abused and assaulted, yet the abuse continued without corrective action by Devereux. The history of sexual abuse at Devereux facilities is well-documented.  In fact, the CEO of Devereux was not surprised to hear of the repeated sexual and physical abuse revealed by the *Philadelphia Inquirer's* recent investigation. As stated in his response to the Report, the CEO suggested that Devereux was aware of *every* incident of abuse included in the Report.[138]

153.     Devereux is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Devereux youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

154.     Devereux is responsible for setting and approving all national, organization-wide policies and protocols for Devereux programs and operations, including sex discrimination policies.

155.     Devereux failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs. As a result of this deliberate indifference, Plaintiffs have been subjected to severe sexual abuse.

---

[138]
https://web.archive.org/web/20210301153112/https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited June 2, 2022).

2416825.6

156.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux was so severe, pervasive and objectively offensive that it effectively barred their access to educational opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Devereux.[139] This is because abuse—and the constant risk and fear of it—physiologically rewires the brain in a way that impairs learning, development, communication, and growth.[140]

157.    Plaintiffs, who were all school-aged at the time of their abuse, relied on Devereux to receive their education.  Being subjected to pervasive, repeated abuse and a sustained threat of sexual assault denied Plaintiffs the ability to benefit from Devereux's educational opportunities. The severe anxiety, trauma, fear, and suffering inflicted by Devereux prohibited Plaintiffs' ability to meaningfully participate in their classes and educational programming at Devereux.

158.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiffs were damaged.

159.    Devereux was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

---

[139] The effect of childhood trauma on learning is profound. More than half of those abused as children reported having learning or behavioral problems compared with just three percent of those who were not abused. *See* BKTS at 146.

[140] *See, e.g.,* BKTS at 21 ("Trauma results in a fundamental reorganization of the way mind and brain manage perceptions. It changes not only how we think and what we think about, but also our very capacity to think."); *id.* 44-45 (trauma deactivates the left hemisphere of the brain, which "has a direct impact on the capacity to organize experience into logical sequences… In technical terms they are experiencing the loss of executive function."); *id.* 46 ("The insidious effects of constantly elevated stress hormones include memory and attention problems…"); *id.* 70 ("attention, concentration, and new learning … are compromised by trauma"); *id.* 325 ("Chronic abuse and neglect in childhood interfere with the proper wiring of sensory-integration systems. In some cases this results in learning disabilities…").

a.    Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

b.    Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Devereux;

c.    Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Devereux residents and patients;

d.    Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

e.    Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

160.    Devereux's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further. Because Devereux failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Devereux, instead allowing this conduct to thrive, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

161.    In addition to compensatory damages, which are the direct and proximate result of Devereux's actions and/or inactions, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

<div align="center">

**COUNT II**
**NEGLIGENCE**

</div>

162.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

163.     Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

164.     Devereux acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Devereux programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs.

165.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

166.     By failing to exercise ordinary care through their acts and omissions, Devereux caused harm to Plaintiffs.

167.     Because of Defendants' breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

## COUNT III
## NEGLIGENT HIRING

168.    Devereux is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendants' programs.

169.    Devereux knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags," Devereux would have known that these employees were not suitable for the particular duty of caring for children.

170.    It was unreasonable for Devereux to hire employees whom Devereux should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

171.    As detailed above, Plaintiffs were harmed by various Devereux staff members. These harms include: rape, sexual assault, sexual grooming behaviors, physical assault, and withholding meals.

172.    Because of Devereux's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

## COUNT IV
## NEGLIGENT RETENTION

173.     Devereux became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Devereux patients and residents, and yet failed to investigate, discharge, or reassign these employees.

174.     Devereux knew or should have known that the retention of staff members who abused Plaintiffs posed a risk or hazard to the youth in its treatment programs.

175.     Devereux reasonably should have known that, among other things, its staff physically assaulted Plaintiff Thomas and inappropriately touched him. Despite the fact that Devereux reasonably should have known about this abuse, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

176.     Devereux reasonably should have known that its staff punished Plaintiff Standley-Toro by physically abusing him and forcing him to share a room with a patient who Devereux staff knew had molested his roommate, who then raped Plaintiff Standley-Toro. Plaintiff Standley-Toro even reported this abuse to Devereux staff. With reasonable supervision, protocols, and checkpoints in place, Devereux should have been aware of these egregious acts. Despite the fact that Devereux reasonably should have known about this abuse, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

177.     Devereux reasonably should have known that Devereux staff abused Plaintiff John Doe 4 by inappropriately restraining him, unnecessarily placing him in seclusion, and subjecting him to unwanted and inappropriate touching. Despite the fact that Devereux reasonably should have known about this abuse, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

178.    Devereux reasonably should have known that Devereux staff verbally and sexually abused Plaintiff Jane Doe 4. Devereux staff also should have known that male staffers routinely watched Plaintiff Jane Doe 4 while she took showers. With reasonable supervision and protocols in place, Devereux should have known about each of these incidents. Despite the fact that Devereux reasonably should have known about this abuse, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

179.    Devereux reasonably should have known that other Devereux clients verbally and sexually abused Plaintiff Jane Doe 7. Devereux staff also should have known that a male staffers was engaging in sexual relations with a female client.

180.    With reasonable supervision and protocols in place, Devereux should have known about each of these incidents. Despite the fact that Devereux reasonably should have known about this abuse, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

181.    Defendants reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendants' breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously harmed.

## COUNT V
## NEGLIGENT SUPERVISION

182.    Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Defendant possessed a

special relationship with Plaintiffs, as Devereux was entrusted with the duty of care and custody over Plaintiffs, who were minors at the time.

183.    Devereux knew or should have known that the lack of supervision of staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs.

184.    Youth in Devereux programs cannot reasonably be expected to protect themselves. No child is reasonably able to protect himself or herself from sexual, physical, and emotional assaults and abuses by staff who are tasked with their care. This is even more true for youth in Defendants' programs, who come to Devereux because of their need for advanced behavioral health supports. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with others and understand an appropriate versus an inappropriate interaction with a teacher or staff member.[141]

185.    Devereux reasonably should have known that Devereux encouraged Plaintiff John Doe 4 to run away from the facility although he was on suicide watch, and that Plaintiff John Doe 4 supervised as he cut his wrists and attempted to commit suicide.

186.    Devereux failed to exercise ordinary care to prevent intentional harms by their employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse towards Devereux patients, students, and residents. This gave Devereux reason to know that abuse of their residents

---

[141] In addition, people who have experienced trauma are "stuck"—every new encounter is contaminated by past trauma. BKTS at 76. "[A]s long as the mind is defending itself against [past and future] assaults, our closest bonds are threatened, along with our ability to imagine, plan, play, learn, and pay attention to other people's needs." *Id.*

and patients was commonplace and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

187.    Devereux knew that it had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

188.    Despite knowing of this pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols including, for example: staffing sufficient numbers of Direct Support Professionals such that staff members are not alone with children, enacting supervision protocols to ensure that staff are following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and taking immediate action to investigate, reassign, and/or terminate employment for staff who engaged in abusive behavior towards their patients and residents.

189.    Because of Defendants' negligent supervision, in which Devereux breached its duty to exercise reasonable care to prevent outrageous and tragic harms to youth in its care, Plaintiffs were gravely harmed.

## COUNT VI
## GROSS NEGLIGENCE

190.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

191.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

192.    Devereux acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

2416825.6

193.    At all relevant times, Devereux owed a duty to Plaintiffs to implement practices and policies to:

      a.      Prevent sexual, emotional, and physical abuse of youth by Devereux staff;

      b.      Prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

      c.      Prohibit grooming and other sexually exploitative behavior by Devereux staff;

      d.      Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

      e.      Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

      f.      Mandate the training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

      g.      Protect Plaintiffs from such abuse and foreseeable risks; and

      h.      Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

194.    Defendants' duty arose from taking responsibility for the care and custody of youth attending their programs.

195.    Devereux acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Devereux for treatment, growth, and education, including Plaintiffs.

196.    Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Devereux created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

197.    As one of the nation's largest behavioral healthcare organizations, Devereux is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Devereux thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

198.    The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments.[142] Especially in a group home or residential

---

[142] In addition, it is well established that traumatized people—even adults—have enormous difficulty telling other people what has happened to them. *See* BKTS at 43. "Their bodies re-experience terror, rage, and helplessness, as well as the impulse to fight or flee, but these feelings are almost impossible to articulate." *Id.* This is because "all trauma is preverbal." *Id.* Indeed, studies using brain scans show that the area of the brain responsible for putting thoughts and feelings into words, Broca's area, shuts down when trauma is experienced, or re-experienced (such as via a flashback or an attempted description). *Id.* at 44, 60, 70.

treatment setting, abuse can more easily be hidden and children may have limited access to

police, advocates, or social services representatives who can intervene.[143]

199.    By recklessly failing to keep these children safe while in its care and custody,

Devereux exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

200.    As a direct and proximate result of Defendants' reckless indifference to Plaintiffs,

Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and

emotional distress and suffering, physical manifestations of this distress, loss of self-esteem,

anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will

continue to be prevented from performing their activities of daily living due to the gross

negligence of Devereux.

## COUNT VII
## NEGLIGENT MISREPRESENTATIONS

201.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

202.    In the course of their business, Defendant presents itself as maintaining a gold

standard in the field of behavioral health treatment for youth with disabilities. Devereux's

website describes its "core values" of compassion, knowledge, collaboration, dedication,

learning and progress.[144] Devereux details its commitment to serving the community, and its use

of a philosophy of care which "integrates the latest scientific and medical advancements with

time-tested philosophies and compassionate family engagement to provide practical, effective

and efficient care, making a meaningful difference in the lives of those we serve, and the world

around them."[145]

---

[143] https://www.childwelfare.gov/topics/can/factors/ (last visited June 2, 2022).
[144] https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=DD6B52FFC9FF6889D9FC1A342C5CF38E&pagename=Mission (last visited June 2, 2022).
[145] https://www.devereux.org/site/SPageServer/?pagename=philosophy_of_care (last visited June 2, 2022).

203.    Devereux's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols "through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices."[146] Through its advertising, Devereux represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Devereux failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

204.    Devereux's website and advertising misrepresents material facts regarding the quality of its programs, as Devereux fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendants' representations were not true, as Devereux negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

205.    Plaintiffs and their family members relied on Defendants' representations about the quality of their programs in choosing to enroll in treatment at Devereux.

206.    Devereux knew or should have known that the representations about the quality of their programs—especially the safety and security of their patients, students and residents— would be relied upon by those individuals and their families.

207.    Plaintiffs were harmed because of Devereux's negligent misrepresentations about the safety and security of their programs.  Plaintiffs' parents and guardians reasonably relied on

---

[146] https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited June 2, 2022).

Devereux's representations of safety and security and were thereby harmed when they unknowingly placed their children in Devereux's custody.

<div align="center">

**COUNT VIII**
**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT,**
**COLORADO REVISED STATUTES ("C.R.S.") §§ 6-1-101, ET SEQ.**
**(Plaintiff Jane Doe 4 Against Devereux)**

</div>

208.   Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

209.   The Colorado Consumer Protection Act protects consumers by deterring and punishing businesses for engaging in unfair or deceptive trade practices.

210.   Plaintiff Jane Doe 4, through her parents and/or guardians, purchased behavioral health services from Devereux.

211.   Devereux engaged in deceptive trade practices in violation of §6-1-105 of the Colorado Consumer Protection Act including by:

   a.   Knowingly making a false representation as to the source, sponsorship, approval, or certification of their services;

   b.   Knowingly  making a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of their services;

   c.   Representing that their services, or property are of a particular standard, quality, or grade, when they knew or should have known that they are of another; and

   d.   Advertising services with intent not to sell them as advertised.

212.   These unfair trade practices occurred in the course of Devereux's business as a behavioral health provider.

<div align="center">- 60 -</div>

213.    Devereux's acts and practices violated the Colorado Consumer Protection Act because Devereux failed to disclose information that was material to Plaintiff Jane Doe 4s' transactions with them:

      a.    When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jane Doe 4.

      b.    Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

214.    Devereux had ample means and opportunities to alert Plaintiffs at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alert Plaintiff Jane Doe 4 and her family that she had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

215.    Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of their treatment centers. Had Devereux made the above disclosures, revealing to Plaintiff Jane Doe 4 and her family that in reality, Devereux's patients were subjected to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in

place to adequately protect and care for vulnerable children, Plaintiff Jane Doe 4 would not have been sent to Devereux for her treatment.

216.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from Plaintiff Jane Doe 4, and her family.

217.    Devereux's unfair and deceptive practices continue to have a significant impact on the public. Every year, over 25,000 families purchase behavioral health services from Devereux across the country, exposing an incredible number of vulnerable children to Devereux's deceptive conduct. Parents of these youth are positioned to be less knowledgeable than a leading national behavioral health care provider like Devereux, whose services are meant to provide guidance and support to families navigating the challenges of raising children with advanced behavioral, emotional, and mental health needs. Children with disabilities are among the most vulnerable of any recipient of a good or service, as they often times do not have the capacity to understand or respond to instances of the most grievous sexual, physical and emotional abuse. Devereux's pattern and practice of deceiving families regarding the safety and security of its programs and the ability of its staff to appropriately monitor and supervise patients has had devastating impacts on the dozens and dozens of children who have been abused during their treatment at Devereux, as detailed above.

218.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the Colorado Consumer Protection Act, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Devereux. Devereux's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms. Plaintiff Jane Doe 4 would not have paid for Devereux's behavioral health services had they not been deceived by Devereux in this way. Plaintiff's harms therefore include economic harms: instead of receiving the treatment they paid for at Devereux, they were abused.

219.    Plaintiff Jane Doe 4 is accordingly entitled to three times the amount of actual damages incurred, as Devereux acted in bad faith in knowingly failing to provide Plaintiff with appropriate safety, care, and supervision during their time at Devereux.  Plaintiff also seeks equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

**COUNT IX**
**ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF**
**THOMAS**
**(Plaintiff Thomas Against Devereux)**

220.    Plaintiff Thomas incorporates by reference all prior paragraphs as if set forth in full herein.

221.    While Plaintiff Thomas resided at Devereux in Glenmoore, Pennsylvania between the ages of 17 and 18, Devereux staff members physically and sexually assaulted him. Plaintiff Thomas was slammed into walls with his hands pinned behind his back and assaulted in front of supervisors who encouraged staff members to continue assaulting Plaintiff Thomas.

222.    Plaintiff Thomas was sexually abused by Devereux staff members. One female staff member inappropriately touched Plaintiff Thomas multiple times, including attempting to

place her hands down Plaintiff Thomas' pants and touching his chest. The same female staff member instructed Plaintiff Thomas to strip and watched him shower.

223.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery for which Devereux is vicariously liable.

224.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Thomas by its staff because appropriately restraining Plaintiff—and ensuring he did not hurt himself in the shower—fall within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint and supervision to protect the student, their peers and/or staff from harm.

225.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Thomas by its staff because their employees were acting within the scope of their employment. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

226.    As a result of the assault and battery against Plaintiff Thomas for which Devereux is vicariously liable, Plaintiff Thomas suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Plaintiff Thomas for the rest of his life.

## **COUNT X**
### **ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF STANDLEY-TORO**
#### **(Plaintiff Standley-Toro Against Devereux)**

227.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

228.     Devereux staff members, who are put in charge of Devereux patients and trusted to keep them safe, used the authority and power associated with their roles to abuse Plaintiff Standley-Toro.

229.     While a patient at Devereux in Woodville, FL at the age of 12, Devereux staff physically abused Plaintiff Standley-Toro, including by striking him with their arms, legs, and with objects.

230.     Plaintiff Standley-Toro did not and could not consent to these grievous harms and abuses.

231.     Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Standley-Toro by its staff because appropriately restraining Plaintiff Standley-Toro falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint to protect the student, their peers and/or staff from harm.

232.     Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff by its staff because Devereux employed its staff and staff were acting within the scope of employment.

233.     As a result of the assault and battery against Plaintiff Standley-Toro for which Devereux is vicariously liable, Plaintiff Standley-Toro has suffered severe emotional and physical harms that continue to affect him today and will continue to cause Plaintiff pain and suffering for the rest of his life.

## COUNT XI
### ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: PLAINTIFF JOHN DOE 4
#### (Plaintiff John Doe 4 Against Devereux)

234.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

235. Devereux staff members, who are put in charge of Devereux patients and trusted to keep them safe, used the authority and power associated with their roles to abuse Plaintiff John Doe 4.

236. While a patient at Devereux in Westminster, CO, Devereux staff physically abused Plaintiff John Doe 4, including by repeatedly restraining him in inappropriate ways that caused him physical harm. Devereux staff also inappropriately "tickled" and touched Plaintiff John Doe 4 against Devereux policy.

237. Plaintiff John Doe 4's teacher also repeatedly placed him in unsanitary seclusion rooms unnecessarily.

238. Devereux staff also withheld food from Plaintiff John Doe 4 and subjected him to verbal abuse by threatening and cursing at him.

239. Plaintiff John Doe 4 did not and could not consent to these grievous harms and abuses.

240. Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 4 by its staff because appropriately restraining and feeding Plaintiff John Doe 4 falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint to protect the student, their peers and/or staff from harm.

241. Further, Devereux is vicariously liable for assault and battery perpetrated on Plaintiff by its staff because Devereux employed its staff and staff were acting within the scope of employment.

242. As a result of the assault and battery against Plaintiff John Doe 4 for which Devereux is vicariously liable, Plaintiff John Doe 4 has suffered severe emotional and physical

harms that continue to affect him today and will continue to cause Plaintiff pain and suffering for the rest of his life.

<div align="center">

**<u>COUNT XII</u>**
**ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: JANE DOE 4**
**(Plaintiff Jane Doe 4 Against Devereux)**

</div>

243.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

244.    While Plaintiff Jane Doe 4 was a patient at Devereux in Westminster, Colorado at age 14, Devereux staff sexually and physically assaulted her.

245.    When staff members saw Plaintiff Jane Doe 4 smoking a cigarette, they threatened to restrain her with a five-point harness and forced her to take drugs if she did not do jumping jacks naked in a padded room.

246.    Devereux staff drugged Plaintiff Jane Doe 4  using a powerful ADHD medication without her consent, checking her mouth to ensure that she swallowed all the pills that they gave her.

247.    During Plaintiff Jane Doe 4's orientation at Devereux, Devereux staff warned her that male patients at the facility were sexual predators, threatening her to "be careful" around them.

248.    Devereux staff also watched Plaintiff Jane Doe 4 and other girls while they showered and would mock the youth by recounting their medical and personal history in front of other patients.

249.    Plaintiff Jane Doe 4 did not and could not consent to these grievous harms and abuses.

250.    These intentional acts of bodily harm and/or non-consensual sexual acts constitute assault and battery by Devereux through the doctrine of vicarious liability.

251.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 4 by its staff because appropriately restraining Plaintiff Jane Doe 4—and ensuring she take the appropriate medication and not hurt herself in the shower—falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate *appropriate* restraint and supervision to protect the student, their peers and/or staff from harm.

252.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 4 by its staff because staff acted within the scope of their employment.

253.    As a result of the assault and battery against Plaintiff Jane Doe 4 for which Devereux is vicariously liable, Plaintiff Jane Doe 4 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff Jane Doe 4 pain and suffering for the rest of her life.

### <u>COUNT XIII</u>
### ASSAULT AND BATTERY THROUGH VICARIOUS LIABILITY: JANE DOE 7
#### (Plaintiff Jane Doe 7 Against Devereux)

254.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

255.    While Plaintiff Jane Doe 7 was a patient at Devereux in Malvern, Pennsylvania at age 17, Devereux staff and other clients sexually and physically assaulted her.

256.    When Plaintiff Jane Doe 7 arrived at Devereux, three clients jumped on top of her to attempt to steal her prescription beverages, and covered her head to prevent her from screaming. When a Devereux staff member learned about this incident, he pulled Plaintiff Jane Doe 7 out of her room, shoved her into a staff office in the unit, and closed and locked the door behind him, ultimately moving her to a different unit.

257.    In the new unit, Plaintiff Jane Doe 7 was sexually assaulted by her roommate over four or five times, with the episodes becoming increasingly worse. Each time, Plaintiff Jane Doe 7 yelled, but no Devereux staff came.

258.    While Plaintiff Jane Doe 7 was at Devereux, she learned that a male staff member who worked the overnight shift began having a sexual relationship with a client, and their loud noises kept her up at night. Hearing those noises instilled a fear in Plaintiff Jane Doe 7 that the staff member may come for her next.

259.    On one occasion while Plaintiff Jane Doe 7 was at Devereux, she attempted to commit suicide. However, "no one seemed to care" and Devereux staff never addressed her underlying issues.

260.    Plaintiff Jane Doe 7 did not and could not consent to these grievous harms and abuses.

261.    These intentional acts of bodily harm and/or non-consensual sexual acts constitute assault and battery by Devereux through the doctrine of vicarious liability.

262.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 7 by its residents who abused her because appropriately supervising residents falls within the scope of Devereux staff members' employment.

263.    As a result of the assault and battery against Plaintiff Jane Doe 7 for which Devereux is vicariously liable, Plaintiff Jane Doe 7 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff Jane Doe 7 pain and suffering for the rest of her life.

## COUNT XIV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

264.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

265.    Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress.

266.    Devereux acted negligently towards each Plaintiff, as described above.

267.    This negligent conduct created an unreasonable risk of physical harm, which caused Plaintiffs to be in fear of their own safety.

268.    Devereux's negligence either placed Plaintiffs in the zone of danger of physical impact or injury or resulted in the Plaintiff suffering actual injury.

269.    Plaintiffs suffered emotional distress as a result of Devereux's negligent conduct. This resulted in physical consequences and/or long-continued emotional disturbance, as described above.

270.    Devereux's conduct was the cause of these damages.

271.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

## COUNT XV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

272.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

273.    Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result.

274.    Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

275.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

276.    By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

## COUNT XVI
## BREACH OF FIDUCIARY DUTY

277.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

278.    Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

279.    By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached their fiduciary duty towards Plaintiffs.

280.    Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

<div align="center">**PRAYER FOR RELIEF**</div>

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment on their behalf and against Devereux, and further grant the following relief:

A.    Award Plaintiffs compensatory damages, punitive damages, pain and suffering, and any other relief to which they are entitled under the law;

B.    Award Plaintiffs prejudgment interest, costs and attorneys' fees; and

C.    Award to the Plaintiffs such other and further relief as the Court deems just and proper.

<div align="center">**DEMAND FOR TRIAL BY JURY**</div>

Plaintiffs respectfully request a trial by jury as to all matters so triable.

Dated: June 2, 2022                          Respectfully submitted,


*/s/ Joseph G. Sauder*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
Lori G. Kier
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0580
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.co
jbk@sstriallawyers.com
lgk@sstriallawyers.com

Annika K. Martin (*admitted pro hac vice*)
Jessica Moldovan (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
Phone: (212) 355-9500

Facsimile: (212) 355-9592
akmartin@lchb.com
jmoldovan@lchb.com

Kelly Dermody (*admitted pro hac vice*)
Phong-Chau Nguyen (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Fancisco, CA 94111
Phone: (415) 956-1000
kdermody@lchb.com
pgnguyen@lchb.com

Mark Chalos (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com

David Rudovsky
**KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN, LLP**
718 Arch Street
Philadelphia, PA 19106
Phone: (215) 925-4400
drudovsky@krlawphila.com

## **CERTIFICATE OF SERVICE**

I, Lori G. Kier, certify that a true and correct copy of the COMPLAINT has been filed

electronically this 2nd day of June, 2022  with the Clerk of Court using the CM/ECF system,

which will send notification of such to all counsel of record indicated below:

> Joseph McHale, Esq.
> Cameron Redfern, Esq.
> Jeffrey Lutsky, Esq.
> Michael Wise, Esq.
> Stradley Ronon Stevens & Young, LLP
> 30 Valley Stream Parkway
> Malvern, PA. 19355-1481

> */s Lori G. Kier*
> Lori G. Kier

2416825.6